Tom BATES; Edward H. Lyman; Ardis Graham; Richard D. Lewis; Lawrence J. Buchalter; Jonathan Browning; Rachel Sherman; Martha A. Escutia; Sylvia Hernandez; Ana Rosa Pena; Claudia Navar; Barbara J. Friedman; Susan Zarakov; Harriet Sculley, Plaintiffs–Appellants,

v.

Bill JONES, Secretary of the State of California; Bradley J. Clark; Alameda County Registrar Of Voters; Conny McCormack, Los Angeles County Registrar of Voters, Defendants–Appellees,

and

Peter F. Schabarum; Lewis K. Uhler; Lee A. Phelps; National Tax Limitation Committee; Alliance Of California Taxpayers & Involved Voters; Intervenors–Appellees.

Bill JONES, Secretary of the State of California, Defendant–Appellant,

and

Peter F. Schabarum; Lewis K. Uhler, Intervenors–Appellants,

v.

Tom BATES; Edward H. Lyman; Richard D. Lewis; Lawrence J. Buchalter; Jonathan Browning; Rachel Sherman, Plaintiffs–Appellees,

and

National Tax Limitation Committee; Alliance Of California Taxpayers & Involved Voters, Intervenors,

v.

Bill JONES, Secretary of the State of California, Defendant–Appellant.

Nos. 97–15864, 97–15914.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 6, 1997.

Order Decided Oct. 7, 1997.

Einer Elhauge, Harvard Law School, Cambridge, Massachusetts; Daniel E. Lungren, California Attorney General, Sacramento, California, for defendant-appellant Bill Jones.

Anthony T. Caso, Pacific Legal Foundation, Sacramento, California, for intervenors-appellants Peter F. Schabarum, et al.

Joseph Remcho, Remcho, Johansen & Purcell, San Francisco, California, for plaintiffs-appellees Tom Bates et al.

Stephen J. Safranek, University of Detroit Mercy School of Law, Detroit, Michigan, for amicus curiae U.S. Term Limits.

Before: SNEED, FLETCHER, and REINHARDT, Circuit Judges.

In this case involving the constitutionality of California's initiative (Proposition 140) imposing lifetime legislative term limits, the court has before it two motions for intervention.[1] In the first motion, twenty state legislators and voters request leave to intervene on the side of plaintiffs-appellees Tom Bates, et al.[2] In the second motion, one state legis-

---

1. We concurrently file an opinion in which we determine the validity of Proposition 140's lifetime-legislative-term-limits provision.

2. The applicants for intervention as plaintiffs-appellees are Kenneth L. Maddy, Donald A. Jackson, Ruben S. Alaya, Sondra J. Elrod, David Gonzalez, Louis B. Medina, Charles M. Calderon, Philip Pace, Leroy F. Greene, Alex F. Ives,

Teresa P. Hughes, Mary Lou Costano, Bill Lockyer, Mary Robin Torello, Henry J. Mello, Helen A. Mello, Herschel Rosenthal, Steven Parker, Mike Thompson, Mel Varrelman, Diane E. Watson, Anna L. Gonzales, Valerie K. Brown, Doris Elaine Lowe, Cruz M. Bustamante, Lawrence Alderete, Denise M. Ducheny, Verna Quinn, Martin Gallegos, Christopher Kakimi, Diane Martinez, Ruth B. Raful, Kevin Murray, Laura Dixon,

lator, Curt Pringle, and U.S. Term Limits, a non-profit organization that promotes legislation regarding term limits and already enjoys amicus status, seek to intervene on the side of defendants-appellants Bill Jones, et al. The state opposes both motions. We grant the first motion and deny the second.

The controlling principle for our decision is the need for uniformity in the November, 1998 election. The state in its briefs to this court, and to the Supreme Court, has repeatedly expressed its legitimate desire to avoid to the greatest extent possible any unnecessary inequities and delay in the upcoming election cycle. We agree. Unlike the state, however, we believe that the most effective way to achieve this objective is to allow as many parties as possible who seek to run for office contrary to the term limits provision of Proposition 140 to be bound by our decision. Such joinder undoubtedly will facilitate any further judicial action that may occur[3] and will render inconsistent application of the law less likely.

## I. Applicants as Plaintiffs–Appellees

The state primarily argues that the applicants for intervention as plaintiffs-appellees are barred from intervening by res judicata. We thus address that argument first. Finding that it is unpersuasive, we then consider the state's argument that these applicants fail to satisfy the formal criteria for permissive intervention.

### A. Res Judicata

■ We apply California law to the state's res judicata claim. 28 U.S.C. § 1738. The large majority of those seeking to intervene as plaintiffs-appellees were not parties to *Legislature v. Eu*, 54 Cal.3d 492, 286 Cal. Rptr. 283, 816 P.2d 1309 (1991). They are not bound by that decision for the same reasons that plaintiff-appellee Bates is not. Those reasons—in particular, the applicabili-

ty of the public interest exception—are fully set out in our opinion on the merits. *See Bates v. Jones*, slip op. at 12968–69. We believe that the strong public interest in uniformity of the law, when combined with the intrinsic importance of the issues presented, justifies our examination of the federal claims of candidates who would be eligible for office under our decision, but not under *Eu*.

■ We also hold, in part for the same reasons, that application of the public interest exception to legislators who actually participated in the *Eu* litigation is justified under the unusual circumstances present here. Another exception recognized by California courts is applicable to these proposed intervenors as well. Under California law, a prior legal determination is not conclusive "if injustice would result," *Kopp v. Fair Political Practices Comm'n*, 11 Cal.4th 607, 47 Cal. Rptr.2d 108, 905 P.2d 1248, 1257 n. 16 (1995), or, put differently, if "a new determination is warranted in order to avoid the inequitable administration of the laws." *Rutherford v. State*, 188 Cal.App.3d 1267, 233 Cal.Rptr. 781, 789 (1987). It is obvious that voters and candidates alike would suffer a serious injustice and the laws would be administered inequitably if a small number of incumbents were barred from office because they were plaintiffs in *Eu*, but all other incumbents were permitted to run for re-election. Voters in a small number of election districts would then be deprived of the rights enjoyed by all other voters simply because their legislators had unsuccessfully sought a particular remedy for an unconstitutionally enacted law. The need for uniform election practices is all the more compelling because—whatever one's view of the benefits or evils of incumbents who have served more than a few terms—it seems obvious that some voters should not be allowed to be represented by a

Lisa Dixon, Marc Pryor, Grace F. Napolitano, Robert L. Henderson, Don Perata, Penny L. Stanley, Roderick D. Wright, and Ruby Maillian.

**3.** We note that the state, even prior to our decision on the merits, petitioned the Supreme Court for, *inter alia*, expedited review of this case. In the event that the Court grants review, our ruling would ensure that as many of the affected parties

as possible are before the Court. Also, in its most recent filing in the Supreme Court, the state forwarded a newspaper clipping stating that some voters contemplated a new state court proceeding. *See* Supplemental Brief for Petitioner Bill Jones to the U.S. Supreme Court, *Jones v. Bates*, [not docketed] (Sept. 26, 1997).

class of legislators that voters in other districts are precluded from electing, and vice-versa. Such a result would be inconsistent with the elementary principles of fairness that govern California's elections. *See, e.g., Storer v. Brown,* 415 U.S. 724, 736, 94 S.Ct. 1274, 1282, 39 L.Ed.2d 714 (1974) (discussing California's compelling interest in maintaining the integrity of its elections); *Legislature v. Deukmejian,* 34 Cal.3d 658, 194 Cal.Rptr. 781, 669 P.2d 17 (1983).

## B. Criteria for Intervention

■ Intervention on appeal is governed by Rule 24 of the Federal Rules of Civil Procedure. *See Landreth Timber Co. v. Landreth,* 731 F.2d 1348, 1353 (9th Cir.), *rev'd on the merits,* 469 U.S. 1016, 105 S.Ct. 427, 83 L.Ed.2d 354 (1984). Intervention at the appellate stage is, of course, unusual and should ordinarily be allowed only for "imperative reasons." *Landreth Timber,* 731 F.2d at 1353. This case, however, is nothing if not unusual.

■ The state bases its objection regarding the criteria for intervention solely on an alleged lack of timeliness.[4] The state contends that if we allow these applicants "casual[ly]" to intervene now, we will open the door for future litigants to "sandbag" other parties by waiting to intervene until a favorable ruling seems likely. The state's argument ignores the highly unusual posture and circumstances of this case.

In analyzing timeliness, we focus "on the date the person attempting to intervene should have been aware his 'interest[s] would no longer be protected adequately by the parties,' rather than the date the person learned of the litigation." *Officers for Jus-*

tice v. Civil Service Comm'n, 934 F.2d 1092, 1095 (9th Cir.1991) (quoting *Legal Aid Soc'y v. Dunlop,* 618 F.2d 48, 50 (9th Cir.1980)). After oral argument in this appeal, the state raised the possibility that California courts would not accept this court's interpretations of federal law except as to the parties named in this action because a ruling by this court that Proposition 140 is unconstitutional would create a continuing conflict between the federal and state courts as to the eligibility of candidates who have participated neither in this litigation nor in *Eu*—in short, that the 1998 elections would be thrown into a state of disarray. Whether the Secretary of State will, as a general matter, actually refuse to follow this court's ruling is irrelevant. It is enough that he has signaled the possibility that he may do so. Until that assertion, the proposed intervenors believed that they would be able to benefit from a favorable ruling by this court because the California Supreme Court has yet to disregard a directly applicable decision of this court on a question of federal law.[5]

Even more important, however, are the rights of the voters. It is not too late to ensure that their interests in fairness and uniformity are protected if all that is required is to permit candidates who will seek re-election to become bound by our decision. The state's electoral process would be subject to disruption if eligibility in each district has to be decided in a separate lawsuit. Surely all parties should want uniformity in the 1998 election. Whatever the ultimate outcome of this case, intervention can only be a step in that direction.

Under these circumstances, and given the fundamental nature of the right at stake, we

---

4. The state does not challenge these applicants' assertions that they satisfy all of the other criteria for intervention, *see Sierra Club v. United States EPA,* 995 F.2d 1478, 1481 (9th Cir.1993), and applicants easily satisfy these criteria in any event. They are all either legislators who would be "termed out" by Proposition 140, but assert that they wish to run for re-election, or voters who wish to vote for them. Each of these applicants, therefore, has a significantly protectable interest that is subject to impairment. Moreover, if the California courts refuse to follow this court's ruling with respect to nonparties to this litigation, *see* discussion *infra,* these applicants'

interests would not be adequately represented by any current parties.

5. The most that the California Supreme Court has done is to suggest a few times in dicta that it might, under some unspecified circumstances, decline to follow a Ninth Circuit decision on federal law. *See, e.g., Raven v. Deukmejian,* 52 Cal.3d 336, 276 Cal.Rptr. 326, 801 P.2d 1077, 1087 (1990) (noting that our decisions on matters of federal law are "persuasive and entitled to great weight," but not automatically controlling); *People v. Bradley,* 1 Cal.3d 80, 81 Cal.Rptr. 457, 460 P.2d 129, 132 (1969).

find it both "imperative" and in the public interest that we allow these applicants to intervene. Like other cases in which intervention has been allowed on appeal, the state does not assert that it will be prejudiced by intervention, and we find no reason to think otherwise. *See, e.g., Atkins v. State Bd. of Educ.*, 418 F.2d 874 (4th Cir.1969) (per curiam) (granting motion to intervene on appeal in school desegregation case because of the intensity of parents' interest in education of their children and lack of prejudice to state); *Hurd v. Illinois Bell Tel. Co.*, 234 F.2d 942 (7th Cir.) (granting motion to intervene after judgment on appeal because the case was "so fraught with elements of possible prejudice" to applicants and defendants showed no prejudice from intervention), *cert. denied*, 352 U.S. 918, 77 S.Ct. 216, 1 L.Ed.2d 124 (1956); *see also Northwest Forest Resource v. Glickman*, 82 F.3d 825, 836 (9th Cir.1996) (noting importance of prejudice). In fact, the state, like the public, will benefit from uniform applicability of its laws. We therefore deem the first motion timely and grant permissive intervention.

## II. Applicants as Defendants–Appellants

The state (collectively the defendants-appellants) also opposes the applicants Pringle's and U.S. Term Limits' motion to intervene. These would-be intervenors, unlike the others, seek to intervene on the state's side of the case. Here, we agree with the state's position because we believe that these applicants have failed to demonstrate that they satisfy the requirements for intervention and no construct of public interest supports their participation as parties.

■ Unlike the applicants for intervention as plaintiffs-appellants, applicants Pringle and U.S. Term Limits do not have a sufficiently protectable interest in this litigation to warrant intervention. Pringle merely asserts that "[h]e understands that this Honorable Court's decision in this case will affect his future attempts at running for state legislative office...." Nowhere does he assert that he wishes to run for re-election; in fact, by requesting intervention on the side of the

state, Pringle has signaled his desire *to be prevented from running for re-election.* In order to protect this interest, Pringle need only refrain from running for office; no decision by this court could remove any impediment from that goal. Accordingly, Pringle's motion is denied.[6]

■ Applicant U.S. Term Limits, a public interest group that advocates term limits, already enjoys the status of amicus curiae in this case. Unlike the other intervenors on the state's side, it was not an official sponsor of the initiative, and we see no reason to grant it intervenor status. Although this court has held that a "public interest group is entitled as a matter of right to intervene in an action challenging the legality of a measure it has supported," *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir.1995), U.S. Term Limits does not assert that it was "directly involved in the enactment of" Proposition 140 or in "the administrative proceedings in which it arose." *Northwest Forest Resource*, 82 F.3d at 837. Nor does it even contend that any issue is not being properly asserted by the state's new lawyers or the parties who were granted intervenor status below. Rather, it states only that it has assisted in other term limits campaigns across the country and that a law of the type that it supports and promotes will be affected by our ruling. U.S. Term Limits offers no reason why it cannot sufficiently protect its interest as an advocate for term limits laws by its filing of amicus briefs, and we can conceive of none. Accordingly, U.S. Term Limits' motion for intervention is denied.

## III. Conclusion

Intervention is granted as to the 20 named parties seeking leave to intervene as plaintiffs-appellees. Intervention is denied as to Pringle and U.S. Term Limits.

SNEED, Circuit Judge, dissents from this order.

---

**6.** Pringle also asserts without further explanation his interest "as a voter" in intervention. He does not assert, however, that he wishes to vote for any candidate who would be "termed out."