**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| EDWARD PERUTA; MICHELLE LAXSON; JAMES DODD; LESLIE BUNCHER, DR.; MARK CLEARY; CALIFORNIA RIFLE AND PISTOL ASSOCIATION FOUNDATION, *Plaintiffs-Appellants*, | No. 10-56971 D.C. No. 3:09-cv-02371-IEG-BGS |
| STATE OF CALIFORNIA, *Intervenor-Pending*, | ORDER |
| v. | |
| COUNTY OF SAN DIEGO; WILLIAM D. GORE, individually and in his capacity as Sheriff, *Defendants-Appellees*. | |

Filed November 12, 2014

Before: Diarmuid F. O'Scannlain, Sidney R. Thomas, and Consuelo M. Callahan, Circuit Judges.

Order;
Dissent by Judge Thomas

# SUMMARY[*]

## Civil Rights

The panel denied motions to intervene, which were filed after the panel's opinion and judgment holding that a responsible, law-abiding citizen has a right under the Second Amendment to carry a firearm in public for self-defense.

The State of California and the Brady Campaign to Prevent Gun Violence moved to intervene under Federal Rule of Civil Procedure 24 after San Diego Sheriff William D. Gore declined to file a petition for rehearing en banc. The California Police Chiefs' Association and the California Peace Officers' Association, amici in this case, submitted a petition for rehearing en banc. Noting that amici cannot file petitions for rehearing en banc, the panel construed the petition as a motion to intervene.

The panel held that the movants did not meet the heavy burden of demonstrating imperative reasons in favor of intervention on appeal. Noting that the movants sought intervention more than four years after the case began, the panel stated that the stage of the proceedings, the length of the delay, and the reason for the delay all weighed against timeliness. In the absence of a timely motion, intervention was unavailable.

The panel further concluded that 28 U.S.C. § 2403 and Federal Rule of Civil Procedure 5.1 did not provide a basis

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

for intervention because the panel's opinion never drew into question the constitutionality of any California statute, but only questioned San Diego County's exercise of regulatory authority under the relevant state statutes, specifically the County's policy that an assertion of self-defense is insufficient to demonstrate "good cause" under the California statutory scheme.

Dissenting, Judge Thomas stated that the majority's decision to prevent the State of California from intervening in this case conflicted with controlling circuit precedent and deprived one of the parties most affected by the panel's decision the opportunity to even present an argument on an important constitutional question affecting millions of citizens.

---

## ORDER

We must rule on motions to intervene in this Second Amendment case which were filed after our opinion and judgment reversing the District Court were filed.

### I

When Sheriff William D. Gore declined to file a petition for rehearing en banc in this case, the State of California and the Brady Campaign to Prevent Gun Violence moved to intervene under Federal Rule of Civil Procedure 24. The California Police Chiefs' Association (CPCA) and the California Peace Officers' Association (CPOA), amici in this case, submitted a petition for rehearing en banc. However, amici cannot file petitions for rehearing en banc. *See Day v. Apoliona*, 505 F.3d 963, 964 (9th Cir. 2007). We therefore

construe CPCA and CPOA's petition as a motion to intervene. *See* CPCA & CPOA Pet. for Reh'g En Banc at 2 n.2 ("To the extent the Court finds that CPCA and CPOA must be a party in order to submit this petition, CPCA and CPOA request that this Court construe this petition to also be a request to intervene as parties.").

## II

Intervention, both of right and by permission, can occur only "[o]n timely motion." Fed. R. Civ. P. 24(a)–(b). Timeliness is determined with reference to three factors: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *United States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004) (quoting *Cal. Dep't of Toxic Substances Control v. Commercial Realty Projects, Inc.*, 309 F.3d 1113, 1119 (9th Cir. 2002)).

## A

Regarding the first factor, the stage of the proceedings, the age of the case discourages us from declaring the motions timely. The movants sought intervention more than four years after this case began. *See id.* (affirming a district court's denial of a motion to intervene as untimely when it was filed four years into the proceedings).

That this case is now on appeal rather than in the district court further suggests that the motions to intervene are untimely. *See Bates v. Jones*, 127 F.3d 870, 873 (9th Cir. 1997); *Amalgamated Transit Union Int'l, AFL-CIO v. Donovan*, 771 F.2d 1551, 1552 (9th Cir. 1985) (per curiam) ("A court of appeals may allow intervention at the appellate

stage where none was sought in the district court only in an exceptional case for imperative reasons." (internal quotation marks omitted)). In this case, the movants filed motions to intervene after our opinion was filed. If intervention on appeal is limited to "exceptional case[s]," then, by the same logic, intervention after the publication of an appellate opinion must be extremely rare. The first factor, therefore, weighs against timeliness.

B

The second factor, on the other hand, weighs in favor of timeliness. The parties have not given us any reason to believe that they would face prejudice as a result of delayed intervention by the movants.

C

The third factor, the reasons for and length of the delay, suggests that the motions to intervene are untimely. Under our longstanding precedent, "[a] party seeking to intervene must act as soon as he 'knows or has reason to know that his interests might be adversely affected by the outcome of the litigation.'" *United States v. Oregon*, 913 F.2d 576, 589 (9th Cir. 1990) (quoting *United States v. City of Chicago*, 870 F.2d 1256, 1263 (7th Cir. 1989)); *accord Alisal Water*, 370 F.3d at 922–23; *Commercial Realty Projects*, 309 F.3d at 1120.

Both California and the Brady Campaign argue that their delay in moving to intervene was reasonable. They filed their motions shortly after learning that Sheriff Gore would not file a petition for rehearing en banc, which they contend was the moment they knew that Sheriff Gore would not adequately

protect their interests.  Cal. Mot. to Intervene at 13; Brady Campaign Mot. to Intervene at 14.  If the movants originally thought that Sheriff Gore adequately protected their interests, they must have "know[n] that [their] interests might be adversely affected by the outcome of the litigation." *Oregon*, 913 F.2d at 589.  The movants do not deny that they have long been aware of this case.[1]

Although the movants may have avoided some inconvenience to themselves by waiting to seek intervention, such considerations do not justify delay.  *See Alisal Water*, 370 F.3d at 923–24 ("An applicant's desire to save costs by waiting to intervene until a late stage in litigation is not a valid justification for delay.").  A contrary rule "would encourage interested parties to impede litigation by waiting to intervene until the final stages of a case."  *Id.* at 924.

---

[1] The dissent claims that California's delay is justified because "until the majority opinion was issued, it was not apparent that any law or regulation other than the county-specific good cause requirement was in jeopardy." Dissent at 16–17 (citing *Peruta v. County of San Diego*, 758 F. Supp. 2d 1106, 1113–17 (S.D. Cal. Dec. 10, 2010)).  However, the district court opinion itself cited by the dissent noted that the County of San Diego "maintains Plaintiffs are asserting a back door attack on the constitutionality of [the California statute]." *Peruta*, 758 F.Supp.2d at 1115 n.7.  Thus, if "California's firearm regulatory framework" had been placed under "considera[tion]", dissent at 13, such consideration began in the district court long before issuance of our opinion, nearly three and a half years before, in fact.

Moreover, as explained in more detail below, *see* Part IV, *infra*, no law or regulation other than San Diego County's good cause policy has been invalidated, "drawn in question," or placed "in jeopardy" by the panel opinion – notwithstanding San Diego County's claim that state statutes were under "back door attack" or the dissent's insistence that California state law is "in jeopardy." Dissent at 15, 18.

D

California and the Brady Campaign rely on our order in *Day v. Apoliona*, in which we granted the State of Hawaii's motion to intervene even though it was filed after the panel opinion was published. 505 F.3d 963, 966 (9th Cir. 2007). *Day*'s reasoning makes clear that it represents the exception rather than the rule. The *Day* order expressly relied on the fact that Hawaii had not "ignored the litigation or held back from participation to gain tactical advantage." *Id.* Instead, Hawaii had "sought amicus status, and—singlehandedly— argued a potentially dispositive issue in this case to the district court and this panel." *Id.* Such participation was especially helpful because the existing defendants were "unwilling[] . . . to take a position on th[at] issue." *Id.* at 965.

This case is quite different. Neither California nor the Brady Campaign participated as an amicus below or before this Court. Brady Campaign Mot. to Intervene at 1 n.1 (distinguishing between the Brady Campaign and the Brady Center). Although CPCA and CPOA are amici, their participation has not been comparable to Hawaii's in *Day*. CPCA and CPOA did not, "singlehandedly" or otherwise, argue any issue that Sheriff Gore refused to litigate.

III

Considering each of the relevant factors, we conclude that the movants have not met the heavy burden of demonstrating "imperative reasons" in favor of intervention on appeal. *Bates*, 127 F.3d at 873. The stage of the proceedings, the length of the delay, and the reason for the delay all weigh against timeliness. In the absence of a timely motion, intervention is unavailable. Fed. R. Civ. P. 24(a)–(b).

IV

The dissent asserts that 28 U.S.C. § 2403 and Federal Rule of Civil Procedure 5.1 provide a basis for intervention. These assertions are incorrect.

28 U.S.C. § 2403(b) provides:

> In any action, suit, or proceeding in a court of the United States to which a State or any agency, officer, or employee thereof is not a party, *wherein the constitutionality of any statute of that State* affecting the public interest *is drawn in question*, the court shall certify such fact to the attorney general of the State, and shall permit the State to intervene for presentation of evidence, if evidence is otherwise admissible in the case, and for argument on the question of constitutionality. The State shall, subject to the applicable provisions of law, have all the rights of a party and be subject to all liabilities of a party as to court costs to the extent necessary for a proper presentation of the facts and law relating to the question of constitutionality.

28 U.S.C. § 2403(b) (emphasis added). Similarly, Rule 5.1 requires "[a] party that files a pleading, written motion, or other paper *drawing into question* the constitutionality of a federal or *state statute*" to "file a notice of constitutional question" and serve such notice on the relevant sovereign's attorney general. Fed. R. Civ. P. 5.1 (emphasis added).

The dissent admits that no "law or regulation other than the county-specific good cause requirement was in jeopardy" when Peruta presented his challenge to the District Court, dissent at 16, but argues that "on appeal, the case morphed into another challenge entirely, as the majority opinion instead considered the constitutionality of California's firearm regulatory framework." Dissent at 13. But the dissent cannot assert that the case somehow "morphed" on appeal into a new challenge when the only law "drawn into question" on appeal was the law challenged at the District Court: the San Diego County policy.

Peruta's challenge is only to the San Diego County policy that "an assertion of self-defense is insufficient to demonstrate 'good cause'" under the California statutory scheme. *See Peruta v. County of San Diego*, 742 F.3d 1144, 1147–48, 1167–68, 1179 (9th Cir. 2014) (asking "whether San Diego County's 'good cause' permitting requirement 'infringe[s]' the right" to bear arms; assessing "the nature of the infringement that the San Diego County policy purportedly effects on the right to bear arms"). As the opinion states, this is "a narrow challenge to the San Diego County regulations on concealed carry, rather than a broad challenge to the state-wide ban on open carry[.]" *Id.* at 1172–73. Simply put, no California statute has been challenged, overturned, or had its constitutionality "drawn into question." Of course, analyzing the constitutionality of the San Diego County policy required "considering" the California statutory scheme, but only inasmuch as it established the "backdrop" for interpreting the "County's restrictive interpretation of 'good cause'." *Peruta*, 742 F.3d at 1171; *see also id*. at 1169–70 (considering the California scheme and its exemptions, in order to show that "it is as though San Diego County banned all political speech, but

exempted from this restriction particular [people, places, and situations]" and that "the severe restrictions in effect in San Diego County" function as "a near total-prohibition on bearing [arms]").

Most importantly, the opinion never "draws into question" the "constitutionality" of any California statute—it only questions San Diego County's exercise of regulatory authority under such state statutes. *See* Mot. of CA to Intervene at 7 (admitting the Court's opinion does "not directly rul[e] on the constitutionality of state statutes" and only challenges the San Diego County policy regarding "good cause" (internal quotations omitted)). Though the Supreme Court authority interpreting the phrase "drawn in question" is not of recent vintage, it is clear:

> The validity of a statute is not drawn in question every time rights claimed under such statute are controverted, nor is the validity of an authority, every time an act done by such authority is disputed. The validity of a statute or the validity of an authority is drawn in question when the existence, or constitutionality, or legality of such statute or authority is denied, and the denial forms the subject of direct inquiry.

*U.S. v. Lynch*, 137 U.S. 280, 285 (1890) (per Fuller, C.J.), *cited in* 16B C. Wright, A. Miller, E. Cooper, & R. Freer, Federal Practice and Procedure § 4013 (3d ed.) (describing *Lynch*'s description of the phrase "drawn in question" as "[o]ne of the most frequently quoted" nineteenth century decisions which "established [the phrase's] meaning"); *see also Kennard v. State of Nebraska*, 186 U.S. 304, 308 (1902)

(explaining that no federal statute was "drawn in question" when such statutes were construed by the state court, as "the validity of a statute or treaty of the United States is not 'drawn in question,' within the meaning of § 709 [of the Judicial Code], every time rights claimed under a statute or treaty are controverted"), *cited in* 16B Wright & Miller, § 4013; Comment, *The Judiciary Act of 1937*, 51 Harv. L. Rev. 148, 148–49 (1937) ("The chief purpose of [adding § 2403 to the Judicial Code] is to remove the possibility of having a federal statute *declared unconstitutional* in a suit to which the United States was not a party . . . ." (emphasis added)).

Thus "[d]rawing in question the validity of a statute" requires more than "the mere objection to an exercise of authority under a statute, whose validity is not attacked." *Jett Bros. Distilling Co v. City of Carrollton*, 252 U.S. 1, 6 (1920); *see also Wilson v. Cook*, 327 U.S. 474, 480–82 (1946) (explaining that suit challenging official's interpretation of state statute as applying to timber collected from U.S. land did not challenge the validity of the statute and thus the statute's constitutionality was not "drawn in question") (citing *Jett Brothers*).[2]  That the opinion engages in analysis

---

[2] *Jett Brothers* and *Wilson* interpreted § 237 of the Judicial Code, which conferred jurisdiction on the Supreme Court when a suit "draw[s], in question the validity of a statute of any State, on the ground of its being repugnant to Constitution, treaties, or laws of the United States." Judiciary Act of 1925, ch. 229, 43 Stat. 936 (enacting Judicial Code § 237).

More recent authority, from this circuit and others, also demonstrates that no state statute has been "drawn into question" here.  Interpreting the accompanying provision of § 2403(a), identical to § 2403(b) except that it involves federal rather than state statutes, we have explained that

and interpretation of California statutes does not change that the only "objection" raised and decided is the exercise of authority under such statutes, not the statutes themselves. No right of intervention under § 2403 or Rule 5.1 exists here.

V

The State of California's Motion to Intervene is **DENIED**.

The Brady Campaign's Motion for Leave to Intervene is **DENIED**.

CPCA and CPOA's Petition for Rehearing En Banc, construed as a motion to intervene, is **DENIED**.

---

§ 2403's purpose is "ensuring that courts not rule on the constitutionality of an Act of Congress without first receiving input from the United States." *Carrol v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003). Certainly ruling on the constitutionality of, say, a federal regulation would not constitute ruling on the constitutionality of an Act of Congress. Analogously, ruling on the constitutionality of a County policy does not constitute ruling on the constitutionality of a "statute of [a] State." *See Int'l Paper Co. v. Inhabitants of Town of Jay, ME.*, 887 F.2d 338, 341 (1st Cir. 1989) (explaining that "challenging a municipal ordinance" does not constitute "questioning the constitutionality of a state statute" under § 2403(b)); *Gillon v. Federal Bureau of Prisons*, 424 Fed. Appx. 722, 726 (10th Cir. 2011) (explaining that a challenge to a federal *agency policy* is not a challenge to a "a federal or state statute" under Rule 5.1); *cf. Schweir v. Cox*, 340 F.3d 1284, 1286 (11th Cir. 2003) (Federal intervention under 28 U.S.C. § 2403(a) was permissible because party argued that federal statute was itself unconstitutional); *Strong v. Bd. of Educ. of Uniondale Union Free Sch. Dist.*, 902 F.2d 208, 213 n.3 (2d Cir. 1990) (finding a statute's constitutionality "drawn into question" when the plaintiff explicitly argued it was unconstitutional); *Arizonans for Official English v. Arizona*, 520 U.S. 43, 74 (1997) (explaining the state Attorney General had a right to intervene under § 2403(b) when a state constitutional provision was directly challenged).

THOMAS, Circuit Judge, dissenting:

The majority's decision to prevent the State of California from intervening in this case conflicts with controlling circuit precedent and deprives one of the parties most affected by our decision the opportunity to even present an argument to us on an important constitutional question affecting millions of citizens. I respectfully dissent.

I

This case began with consideration of the narrow but important question of whether the scope of the Second Amendment extended to concealed carry of handguns in public and, if so, whether San Diego County's "good cause" requirement unconstitutionally infringed on that right. However, on appeal, the case morphed into another challenge entirely, as the majority opinion instead considered the constitutionality of California's firearm regulatory framework.

That the opinion primarily addressed state regulation of handguns could hardly be clearer. Although the majority stated that the plaintiffs "focus[] [their] challenge on the licensing scheme for concealed carry," it construed the plaintiffs' complaint as contending that "the San Diego County policy in light of the California licensing scheme *as a whole* violates the Second Amendment" and "targets the constitutionality of the entire scheme." *Peruta v. County of San Diego*, 742 F.3d 1144, 1171 (9th Cir. 2014) (emphasis in original). It reasoned that in order to resolve the plaintiffs' claims, "we must assess whether *the California scheme* deprives any individual of his constitutional rights." *Id.* at 1169 (emphasis added). Thus, in the majority's view, the

issue in the case is not the concealed carrying of a weapon but rather "whether [the California scheme] allows the typical responsible, law-abiding citizen to bear arms in public for the lawful purpose of self-defense." *Id.* The majority stated that "if self-defense outside the home is part of the core right to 'bear arms' and the California regulatory scheme prohibits the exercise of that right, no amount of interest-balancing under a heightened form of means-ends scrutiny can justify San Diego County's policy." *Id.* at 1167.

Given the majority's opinion, the statutory command on intervention is direct. If the constitutionality of a state statute is drawn into question, that state must be afforded the opportunity to intervene. 28 U.S.C. § 2403(b) provides:

> In any action, suit, or proceeding in a court of the United States to which a State or any agency, officer, or employee thereof is not a party, wherein the constitutionality of any statute of that State affecting the public interest is drawn in question, the court shall certify such fact to the attorney general of the State, and shall permit the State to intervene for presentation of evidence, if evidence is otherwise admissible in the case, and for argument on the question of constitutionality. The State shall, subject to the applicable provisions of law, have all the rights of a party and be subject to all liabilities of a party as to court costs to the extent necessary for a proper presentation of the facts and law relating to the question of constitutionality.

Further, Federal Rule of Civil Procedure 24(a) provides, in relevant part, that "[o]n timely motion, the court must permit anyone to intervene who . . . is given an unconditional right to intervene by a federal statute." Given the clear language of 28 U.S.C. § 2403(b), California should be afforded the right to intervene under Rule 24(a).[1]

In addition, California also has the right to intervene under Federal Rule of Civil Procedure 24(a)(2), which provides that a court must permit anyone to intervene who

> claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2).

Generally, "Rule 24(a)(2) is construed broadly in favor of proposed intervenors." *United States ex rel. McGough v. Covington Tech. Co.*, 967 F.2d 1391, 1394 (9th Cir. 1992). The "liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the

---

[1] The majority concludes that "the constitutionality" of California's laws have not been "drawn in question," based on several cases from the Supreme Court. However, those cases are concerned with the appellate jurisdiction of the Supreme Court, not the proper standard for intervention. *See United States ex rel. Lisle v. Lynch*, 137 U.S. 280, 281 (1890); *Kennard v. State of Nebraska*, 186 U.S. 304, 308 (1902); *Jett Bros. Distilling Co. v. City of Carrollton*, 252 U.S. 1, 5–6 (1920); *Wilson v. Cook*, 327 U.S. 474, 480 (1946).

courts." *United States v. City of Los Angeles*, 288 F.3d 391, 397–98 (9th Cir. 2002) (citation omitted). As we have noted:

> By allowing parties with a practical interest in the outcome of a particular case to intervene, we often prevent or simplify future litigation involving related issues; at the same time, we allow an additional interested party to express its views before the court.

*Id.* at 398 (citation omitted).

The opinion at issue directly involves the entirety of California's handgun regulation scheme, and will greatly impact any future litigation pertaining to the scheme's constitutionality. However, because the County has elected not to pursue a petition for rehearing en banc, no existing party can adequately represent California's interests. Therefore, the requirements of Rule 24(a)(2) are also satisfied.

The majority concludes that California's motion is not timely, citing to the principle that "[a] party seeking to intervene must act as soon as he knows or has reason to know that his interests might be adversely affected by the outcome of the litigation." *United States v. State of Oregon*, 913 F.2d 576, 589 (9th Cir. 1990). Yet this is exactly what California has done. It was not until the majority decision was filed that San Diego County indicated it would no longer defend the case. More importantly, until the majority opinion was issued, it was not apparent that any law or regulation other than the county-specific good cause requirement was in jeopardy. The district court opinion focused solely on the good cause requirement, and the plaintiffs were careful to

argue that the case was about the County's policy, not state regulation. *See Peruta v. County of San Diego*, 758 F. Supp. 2d 1106, 1113–17 (S.D. Cal. 2010). California moved to intervene as soon as it was put on notice that its interests were at stake and would no longer be defended by the County.

As such, this case is similar to *Day v. Apoliona*, 505 F.3d 963 (9th Cir. 2007). *Day* involved a Section 1983 action against the Office of Hawaiian Affairs. The State of Hawaii, filing as amicus but without requesting to intervene, argued that the plaintiffs had no individual rights under the Hawaiian Admission Act that were enforceable under 42 U.S.C. § 1983 – a position that the defendants declined to support. *Id.* at 964. The district court agreed with Hawaii and dismissed the case. When we reversed, the State of Hawaii filed a motion to intervene to file a petition for rehearing en banc because the Office of Hawaiian Affairs had decided not to do so. We granted the motion to intervene, despite the fact that "Hawaii had the opportunity to intervene in this matter at any time during these proceedings, both before the district court and before this Court on appeal." *Id.*

The majority contends that *Day* is distinguishable from this case because California did not file an amicus brief. But California had no need to seek a role in this case until now. In this way, the case for intervention in *Day* was in fact weaker than the one presented here, because the defendants in *Day* had declined "from the beginning" to defend the State of Hawaii's position, while the plaintiffs clearly asserted a theory impacting the State. *Id.* at 965. Here, the County defended the policy in full before both this Court and the district court, and the plaintiffs attempted to craft a case that would avoid impacting California regulation.

There can be no doubt that California has a "significant protectable interest," *Donnelly v. Glickman*, 159 F.3d 405, 410 (9th Cir. 1998), in defending the constitutionality of its laws and regulations regarding handguns and the safety of its citizens. These laws and regulations have been placed in jeopardy by the majority opinion, and no party remains – for the first time in this case – that can adequately defend them. Given the circumstances of this case, California's motion is timely. The plaintiffs will not be prejudiced if California is permitted to intervene – indeed, the plaintiffs did not object to allowing California to intervene under Rule 24(a)(2). Therefore, California has a right to intervene under Rule 24(a).

II

Even if California did not have a right to intervene under Rule 24(a), we should grant the State's alternative request for permissive intervention under Federal Rule of Civil Procedure 24(b). Rule 24(b) permits permissive intervention on the part of a party "who has a claim or defense that shares with the main action a common question of law or fact." The rule requires (1) an independent ground for jurisdiction, (2) a timely motion, and (3) a common question of law or fact. *Blum v. Merrill Lynch Pierce Fenner & Smith Inc.*, 712 F.3d 1349, 1353 (9th Cir. 2013).

Federal question jurisdiction exists, and California is not raising any new claims. Therefore, the independent jurisdictional requirement is satisfied. *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 844 (9th Cir. 2011). As discussed, the motion is timely under the circumstances presented by the case, and there is no question that there are common issues of fact and law. Therefore,

California has satisfied the requirements for permissive intervention. Moreover, the plaintiffs (as well as the defendants) do not oppose permissive intervention. Given the stakes at issue in this case, we should grant permissive intervention upon denying intervention as of right.

## III

Finally, there is an additional, independent ground for granting California's motion to intervene. In my dissent to the panel opinion, I expressed the view that the plaintiffs should have been required to comply with Federal Rule of Civil Procedure 5.1. *Peruta v. County of San Diego*, 742 F.3d 1144, 1196 (9th Cir. 2014) (Thomas, J., dissenting). "Under that rule, if the state or one of its agents is not a party to a federal court proceeding, '[a] party that files a pleading . . . drawing into question the constitutionality of a . . . state statute must promptly' serve the state's attorney general with notice of the pleading and the constitutional question it raises." *Id.* (quoting Fed. R. Civ. P. 5.1(a)). When constitutional issues are raised, the rule also requires the district court to certify to the state's attorney general that the constitutionality of the state statute has been questioned, and permit the state to intervene to defend it. Fed. R. Civ. P. 5.1(b), (c).

If proper certification to the attorney general is not made in the district court, then the remedy on appeal is either to allow intervention on appeal or vacate the decision and remand to the district court to allow intervention. *Oklahoma ex rel. Edmondson v. Pope*, 516 F.3d 1214, 1216 (10th Cir. 2008). Here, we do not need to go so far as to vacate the decision and remand the case, as the Tenth Circuit did.

Instead, the proper remedy is to allow California to intervene on appeal to defend its interest.

IV

In sum, California's motion is timely, and it should be afforded the right to intervene on appeal under Federal Rule of Civil Procedure 24(a). Alternatively, we should grant its motion for permissive intervention under Rule 24(b). Finally, the failures under Rule 5.1 of the plaintiffs to name the State and the district court to certify that constitutional questions were at issue require us to allow intervention on appeal to correct that error.

I respectfully dissent.[2]

---

[2] If California is granted intervention, I would also vote to grant the Brady Center to Prevent Gun Violence's motion for permissive intervention. I would also construe the petition for rehearing en banc filed by the California Police Chiefs' Association and the California Peace Officers' Association as a motion for permissive intervention and grant the motion.