The CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL; The Hazardous Waste Control Account, and the Hazardous Substance Account, Plaintiffs–Appellees,

v.

COMMERCIAL REALTY PROJECTS, INC.; L.A. Metromall, LLC; Atlantic Richfield Company; Chevron U.S.A., Inc., a Pennsylvania Corporation; Minnesota Mining & Manufacturing Company; Mobil Oil Corporation, a New York Corporation; Shell Oil Company; Shell Chemical Co., a Delaware Corporation; Union Oil Company Of California, a California Corporation; Unocal· Corporation; a Delaware Corporation; Standard Oil Company of California, a Delaware Corporation; Richfield Poli Corporation, a Delaware Corporation; Long Beach Oil Development Company, a Nevada Corporation; Southern California Gas Company, a California Corporation; Humble Oil & Refining Co, a Delaware Corporation; Tidewater Oil Company, a Delaware Company; ALLIED SIGNAL INC., a Delaware Company; Gulf Oil Corporation, a Pennsylvania Corporation; Exxon Corporation, a New Jersey Corporation; Phillips Petroleum Company; City of Bellflower; City of Gardena; City of Compton; City of Palos Verdes, Defendants–Appellees.

and

City of Buena Park; City of Hawthorne; City of Hermosa Beach; City of Huntington Park; City of Norwalk; City of Paramount; City of Redondo Beach;

City of Seal Beach; City of South Gate; City of Torrance, Municipal Corporations, Applicants in intervention-Appellants,

and

City of Lynwood, Applicant in intervention-Appellant,

and

City of Lawndale, Applicant in intervention-Appellant,

and

City of Long Beach, Applicant in intervention-Appellant.

Nos. 01–55630, 01–55633, 01–55636 and 01–55638.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 3, 2002.

Filed Oct. 25, 2002.

Lisa Bond, Richards, Watson & Gershon, Los Angeles, CA, for applicants-in-intervention-appellants Cities of Buena Park, Hawthorne, Hermosa Beach, Huntington Park, Paramount, Redondo Beach, Seal Beach, South Gate and Torrance.

Jeremy G. March, Thever & Associates, Los Angeles, CA, for applicant-in-intervention-appellant City of Lynwood.

Richard Motevideo and Treg A. Julander, Rutan & Tucker, LLP, Costa Mesa, CA, for applicant-in-intervention-appellant City of Lawndale.

Lisa Peskay Malmsten, Deputy City Attorney, Long Beach, CA, for applicant-in-intervention-appellant City of Long Beach.

Dennis A. Ragen, Deputy Attorney General, San Diego, CA, for plaintiff-appellee California Department of Toxic Substance Control.

Andrew H. Perellis and Miles A. Zvi, Seyfarth Shaw, Chicago, IL, for defendants-appellees Commercial Realty Projects, Inc. and L.A. Metromall, LLC.

James J. Dragna and Greg A. Christianson, McCutchen, Doyle, Brown & Enersen, LLP, Los Angeles, CA, for defendants-appellees Atlantic Richfield Company, Chevron U.S.A., Inc., Exxon Mobil Corp., Honeywell International Inc., Phillips Petroleum Co., Shell Chemical Co., Shell Oil Co., Southern California Gas Co., Texaco Inc., Union Oil Company of California, and Unocal Corp.

Laura J. Carroll and Jeffrey D. Wexler, Luce, Forward, Hamilton & Scripps, LLP, Los Angeles, CA, for defendant-appellee Long Beach Oil Development Co.

Daniel Romano and Kenneth H. Moss, Law Offices of Daniel Romano, Los Angeles, CA, for amicus curiae City of Carson, Carson Redevelopment Agency, and Community Facilities District No. 95–1 of the City of Carson.

Before: FERNANDEZ, RAWLINSON, Circuit Judges, and SHEA,* District Judge.

RAWLINSON, Circuit Judge.

Applicants–In–Intervention/Appellants Cities of Buena Park, Hawthorne, Hermosa Beach, Huntington Park, Paramount,

---

* The Honorable Edward F. Shea, United States District Judge for the Eastern District of Washington, sitting by designation.

Redondo Beach, Seal Beach, South Gate, Torrance, Lynwood, Lawndale and Long Beach (sometimes collectively referred to as "Cities") appeal the denial of their motions to intervene in this action for recovery of environmental response costs under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA," 42 U.S.C. §§ 9601–75). Cities also challenge the district court's approval of a consent decree to which the parties stipulated. Because Cities' motions to intervene are untimely, we affirm the district court's order denying those motions. As Cities are not parties to this action, they are not entitled to appeal the district court's approval of the consent decree.

### BACKGROUND

From 1959 to 1965, a municipal Class II rubbish disposal facility was operated at a 157–acre landfill in Carson, California (the "Landfill"). Approximately 6.6 million cubic yards of waste, some of which contained hazardous substances, were deposited at the Landfill.

In 1982, the California Department of Health Services, Toxic Substance Control Program ("DTSC") identified the waste disposed at the Landfill and estimated that 4 percent of the material could be considered hazardous. The DTSC divided the Landfill into two operable units ("OUs"): the Upper OU which includes the soil, waste zone, and the ground water immediately beneath the Landfill; and the Lower OU, which includes the ground water beneath the Upper OU.

In October 1995, the DTSC issued a Final Remedial Action Plan (the "Plan") which assigned 80% of the aggregate liability for the hazardous waste in the upper OU to generators of waste sent to the Landfill. Defendants–Appellees Atlantic Richfield Company ("ARCO"), Chevron U.S.A., Inc. ("Chevron"), Exxon Mobil Corp. ("Exxon"), Phillips Petroleum Co.

("Phillips"), Shell Chemical Co. ("Shell Chemical"), Shell Oil Co. ("Shell Oil"), Southern California Gas Co. ("Gas"), Texaco Inc. ("Texaco"), Union Oil Company of California ("Union"), and Unocal Corp. ("Unocal") (sometimes collectively referred to as "Oil Companies"), among others, were identified as potentially responsible parties for the waste. Cities were not identified as potentially responsible parties in the Plan. The Plan, however, indicated that the allocation of responsibility was "non-binding" and did not "limit strict joint, and several liability under CERCLA and other laws."

On December 27, 1995, the DTSC filed an action in federal district court against Commercial Realty Projects, Inc. and L.A. Metromall, LLC, owners of the Landfill (sometimes jointly referred to as "Landowners"), seeking recovery of environmental response costs under CERCLA and state law. On the same day, the parties lodged a consent decree ("Landowner Consent Decree") with the district court. Under the Landowner Consent Decree, Landowners agreed to establish a $26 million escrow account, which would cap Landowners' liability to fund the Plan.

On July 17, 1996, Oil Companies moved to intervene in the action against Landowners to oppose the Landowner Consent Decree which, due to the $26 million cap, potentially shifted a significant portion of the recovery response costs from Landowners to Oil Companies. On July 26, 1996, the district court denied Oil Companies' motion to intervene, which Oil Companies appealed.

On August 19, 1997, Landowners filed a separate action against Oil Companies asserting contribution claims under CERCLA, and other related claims. Beginning September 21, 1998, we stayed Oil Companies' appeal to permit the parties to pursue settlement discussions with the aid of the

Ninth Circuit mediator. The Ninth Circuit mediator suspended the Ninth Circuit mediation to allow a larger group to participate in settlement negotiations under the supervision of a magistrate judge. The DTSC, Oil Companies and Long Beach Oil Development Co. ("Long Beach Oil") subsequently participated in a series of settlement conferences before the magistrate judge.

In August 1999, Oil Companies invited forty-four potentially responsible parties, including Cities, to participate in settlement negotiations with the DTSC and the Landowners. Most refused to attend. In a letter dated September 3, 1999, Oil Companies cited evidence linking Cities and the other potentially responsible parties to the Landfill, and invited those parties to a second meeting to be held on September 22, 1999, but required execution of a confidentiality agreement in order to participate. While Cities' representatives arrived for the meeting, most, if not all of the Cities refused to execute the confidentiality agreement and were not permitted to attend the meeting.

During the same time settlement negotiations were proceeding, Phillips, Union Oil, Unocal and the Shell companies submitted administrative claims under the California Tort Claims Act to Cities in relation to response cost for the Landfill. Oil Companies also served notice upon municipal waste generators of their intent to file suit under the Resource Conservation Recovery Act.

In November 1999, as part of a global settlement with the DTSC, Oil Companies submitted settlement offers to Cities for contribution toward remedial costs at the Landfill in exchange for a full release from liability and contribution protection. Cities rejected the offer. In January 2000, Oil Companies and the DTSC again invited Cities to join in global settlement discus-

sions. Most, if not all, the Cities again refused to participate.

In February 2000, Shell, Union Oil, and Unocal filed an action in federal court against Cities and others, seeking contribution toward remedial costs at the Landfill under CERCLA, and for other legal and equitable relief. Phillips filed a similar complaint.

In May 2000, Oil Companies extended the magistrate judge's invitation to Cities to attend settlement negotiations to be conducted among Oil Companies, Landowners and the DTSC. Most, if not all, either refused to attend or declined to join in global settlement discussions. In September 2000, the DTSC and Oil Companies made a final unsuccessful attempt to include Cities in a global settlement.

In October 2000, the parties settled. On October 20, 2000, the DTSC issued a "Notice to Interested Parties" that it was seeking judicial approval of a Consent Decree to resolve DTSC's claims against Landowners, Oil Companies and others ("Oil Consent Decree"). Cities submitted comments on November 27, 2000, challenging several aspects of the Oil Consent Decree. On December 21, 2000, the district court, pursuant to a stipulation by the parties and Oil Companies, permitted the DTSC to amend its complaint to add Oil Companies as defendants.

After requiring certain modifications incorporating comments to the Oil Consent Decree, the DTSC moved for judicial approval of the Oil Consent Decree on January 5, 2001. On that same day, Cities moved, for the first time, to intervene. On March 5, 2001, the district court denied Cities' motion. On March 9, 2001, the district court entered an order granting the DTSC's motion for judicial approval of the Oil Consent Decree. On March 29, 2001, the district court entered the Oil

Consent Decree. Cities filed timely notices of Appeal.[1]

## DISCUSSION

The Oil Consent decree contains the following provisions which Cities find particularly objectionable:

- Oil Companies are to pay $10 million in recovery costs, with $2 million deposited into an account for Landfill recovery costs (the "Account"), $2 million deposited into the account of attorneys for the Landowners, and $6 million deposited into the Account contingent upon Oil Companies obtaining assignment of all claims against third parties;
- Oil Companies are required to "in good faith pursue third parties to maximize, to the extent practical" recovery from third-parties;
- Oil Companies' recovery from third parties is subject to the following distribution formula: the first $6 million reimburses Oil Companies, the next $1 million defrays Oil Companies' attorney fees, and any additional funds are divided equally between the Account and Oil Companies;
- funds deposited by Oil Companies into the Account shall be considered costs incurred consistently with the National Recovery Plan ("NCP"); and
- the Oil Consent Decree resolves all claims brought by the DTSC against Oil Companies.

Unfortunately, Cities' untimely intervention prevents them from pursuing their objections on appeal.

### A. *Cities' Intervention Motion*

Cities moved to intervene as of right pursuant to CERCLA § 113(i) [42 U.S.C. § 9613(i)] and Fed.R.Civ.P. 24(a). Alternatively, Cities moved for permissive intervention pursuant to Fed.R.Civ.P. 24(b).

The district court denied Cities' motions for intervention because: (1) the motions were untimely, and failed to establish a legally protectable interest that was impaired; (2) the DTSC adequately protected Cities' interests; and (3) Cities' interests were more appropriately addressed through amici curiae status.

■ Fed.R.Civ.P. 24(a) provides for intervention of right as follows:

Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

CERCLA provides for intervention in terms nearly identical to those of Fed. R.Civ.P. 24(a)(2):

In any action commenced under this chapter or under the Solid Waste Disposal Act [42 U.S.C. § 6901 *et seq.*] in a court of the United States, any person may intervene as a matter of right when such person claims an interest relating to the subject of the action and is so situated that the disposition of the action may, as a practical matter, impair or impede the person's ability to protect that interest, unless the President or the State shows that the person's interest is adequately represented by existing parties.

CERCLA § 113(i), 42 U.S.C. § 9613(i). Due to the nearly identical language, the

---

1. We subsequently dismissed Oil Companies' earlier appeal pursuant to a stipulation entered by the parties.

same standards that apply to intervention under Fed.R.Civ.P. 24(a)(2) apply to intervention under CERCLA § 113(i), with the exception that the burden to show that existing parties adequately represent the prospective intervenor's interests is allocated to the President or the State under § 113(i), whereas under Fed.R.Civ.P. 24(a)(2) the party seeking to intervene has the burden to show that no existing party adequately represents its interests. *See United States v. Union Electric Co.*, 64 F.3d 1152, 1156–57 (8th Cir.1995).

■ In *United States v. State of Washington*, 86 F.3d 1499, 1503 (9th Cir.1996), we held that the district court must grant a motion to intervene, pursuant to Rule 24(a)(2), "if four criteria are met: timeliness, an interest relating to the subject of the litigation, practical impairment of an interest of the party seeking intervention if intervention is not granted, and inadequate representation by the parties to the action." (citation omitted). We review the denial of motion to intervene as of right *de novo* with the exception that the district court's determination of timeliness is reviewed for an abuse of discretion. *Id.*

■ Three factors should be evaluated to determine whether a motion to intervene is timely: "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *Id.* (citation omitted). If we find that the motion to intervene was not timely, we need not address any of the remaining elements. *Id.*

■ In *County of Orange v. Air California*, 799 F.2d 535, 538 (9th Cir.1986), we held that filing a motion to intervene filed after the parties had come to an agreement following five years of litigation should weigh heavily against intervention. We reached this holding even though the agreement had not yet been officially approved by the district court. *Id.* In the

present case, Cities did not move to intervene until after the parties settled, more than six years after litigation commenced, and on the same day DTSC moved for judicial approval of the consent decree. Intervention at such a late stage weighs heavily against Cities.

The district court found that the parties would be prejudiced by Cities' intervention because intervention "at the final stage of this action would unnecessarily prolong the litigation, threaten the parties' settlement, and further delay cleanup and development of the [Landfill]." The district court, which presided over the complex litigation for more than six years, did not abuse its discretion in finding prejudice to the parties, since intervention by Cities would complicate the issues and upset the delicate balance achieved by the Oil Consent Decree. *See State of Washington*, 86 F.3d at 1504 (holding that the district court did not abuse its discretion in finding prejudice where intervention would complicate the issues, and upset a delicate balance achieved after years of litigation); *United States v. State of Oregon*, 913 F.2d 576, 588–89 (9th Cir.1990) (holding that the district court did not abuse its discretion by finding prejudice when intervention was sought after settlement involving a delicate compromise following four years of negotiation, with certain points still disputed); *Air California*, 799 F.2d at 538 (ruling that the district court judge, who presided over the case from its inception, did not abuse his discretion when he recognized that intervention after settlement could undo five years of protracted litigation).

Considering that the first two factors weigh against intervention, In this regard, cities must convincingly explain their delay in filing their motions to intervene. Cities essentially argue that they did not delay in filing their motions for intervention, because they could not have determined that

the Oil Consent Decree would affect their interests or that the DTSC would not protect their interests until they were notified of the terms of the decree.

■ While the length of time that has passed since a suit was filed is not, in and of itself, determinative of timeliness, "[a] party seeking to intervene must act as soon as he knows *or has reason to know* that his interests might be adversely affected by the outcome of the litigation." *State of Oregon*, 913 F.2d at 589 (emphasis added, citation and internal quotation marks omitted). While Cities were not certain that the consent decree would be adverse to their interests, they had reason to know that negotiations might produce a settlement decree to their detriment. Cities were informed of settlement negotiations with respect to the Landfill as early as August 1999. Further, on September 3, 1999, Oil Companies informed Cities of their belief that Cities were responsible for recovery costs with respect to the Landfill, and provided some evidence to support their belief. Cities should have realized that the negotiations could result in a consent decree allowing Oil Companies to look to Cities for contribution. Cities could have intervened sooner to protect themselves from this eventuality. Cities should have known that the risks of waiting included possible denial of their motions to intervene as untimely. *See State of Oregon*, 913 F.2d at 589 (finding intervention untimely because applicants had notice of the proceeding and were aware that their interests would be discussed in settlement negotiations); *Air California*, 799 F.2d at 538 (requiring applicant to intervene before settlement when the applicant was aware that the parties were attempting to reach a negotiated settlement and might look to the applicant for help towards the settlement, even though the applicant did not know the terms of the settlement).

■ The district court did not abuse its discretion in denying Cities' motion to intervene as untimely. *See United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 69–74 (2nd Cir.1994) (recognizing that an untimely motion prevents intervention under CERCLA § 113(i) [42 U.S.C. § 9613(i)], intervention of right under Fed.R.Civ.P. 24(a), and permissive intervention under Fed.R.Civ.P. 24(b)). Further, because Cities are not parties to this litigation and do not assert any extraordinary circumstances, they cannot appeal the district court's approval of the Oil Consent Decree. *See United States v. $129,374 in United States Currency*, 769 F.2d 583, 590 (9th Cir.1985) (preventing a potential intervenor from appealing the district court's order granting summary judgment).

## B.  Challenge to the District Court's Jurisdiction

In *Citibank Int'l v. Collier–Traino, Inc.*, 809 F.2d 1438, 1440 (9th Cir.1987), we intimated that a non-party could challenge a district court's lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(h)(3). Cities did not file such a motion, although Cities did challenge the district court's jurisdiction to approve the Oil Consent Decree because Oil Companies' appeal had not yet been dismissed. In *Bennett v. Gemmill (In re Combined Metals Reduction Co.)*, 557 F.2d 179, 200 (9th Cir.1977), we held that the "general rule is that once a notice of appeal has been filed, the lower court loses jurisdiction over the subject matter of the appeal." This general rule, however, refers discretely to a loss of jurisdiction over those aspects of the case involved in the appeal, and is a "judge-made doctrine designed to avoid the confusion and waste of time that might flow from putting the same issues before two courts at the same time." *Kern Oil & Refining Co. v. Tenneco Oil Co.*, 840 F.2d 730, 734 (9th Cir.1988) (citation omitted).

The divestment rule, therefore, is a rule of judicial economy and not one that strips the district court of subject matter jurisdiction. *See Stein v. Wood,* 127 F.3d 1187, 1189 (9th Cir.1997); *see also Shevlin v. Schewe,* 809 F.2d 447, 450–51 (7th Cir. 1987); *Britton v. Co-op Banking Group,* 916 F.2d 1405, 1411 (9th Cir.1990). Cities' challenge simply does not implicate the district court's subject matter jurisdiction over this matter.

### C. *Lack of Appellate Jurisdiction*

Absent a valid challenge to the district court's subject matter jurisdiction, Cities do not otherwise have standing to appeal the district court's approval of the Oil Consent Decree. *See Citibank Int'l,* 809 F.2d at 1440–41 (9th Cir.1987). Accordingly, we lack jurisdiction to consider that portion of Cities' appeal. *See United States v. City of Oakland,* 958 F.2d 300, 301 (9th Cir. 1992).

The district court's order denying Cities' motion to intervene is **AFFIRMED.** The remaining portion of Cities' appeal is **DISMISSED** for lack of jurisdiction.

**AFFIRMED in part, DISMISSED in part.**