Filed 5/8/14  Schlesinger v. Ticketmaster CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 977(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 977(b).  This opinion has not been certified for publication or ordered published for purposes of rule 977.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| CURT SCHLESINGER et al., | No. B248597 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. BC304565) |
| v. | |
| TICKETMASTER, | |
| Defendant and Respondent; | |
| ERIC FULLER, | |
| Movant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Kenneth R. Freeman, Judge.  Affirmed.

Christopher J. Conant for Movant and Appellant.

Alvaradosmith, Robert J. Stein III, Claire M. Schmidt, and Raul F. Salinas Plaintiffs and Respondents.

Greenberg Traurig, Frank E. Meridith, Jr., Jeff E. Scott, and Gregory A. Nylen for Defendant and Respondent.

Eric Fuller (appellant) appeals from an order denying his motion to intervene in a class action against respondent Ticketmaster. Appellant argues that the trial court's order denying his motion constituted an abuse of discretion because his motion was not untimely; would not prejudice the other parties; and because appellant has a protectable interest that is not adequately protected by the named plaintiffs and their counsel.

We find no abuse of discretion and affirm the order.

## FACTUAL BACKGROUND[1]

In July 2003, respondent Carl Schlesinger (Schlesinger) purchased four tickets from Ticketmaster over the Internet for a concert scheduled to take place in Illinois. In addition to the base price for the tickets, Schlesinger paid a "Building/Facility Charge," a "Convenience Charge," and an "Order Processing Charge" (OPC). As Schlesinger was finalizing his order, the Ticketmaster web site prompted him to select a delivery method for his tickets. Schlesinger had the option of choosing standard U.S. Mail, which carried no additional charge, or various "UPS Delivery" options (UPS), which carried charges ranging from $14.50 to $25 depending on the speed of delivery. Schlesinger opted for two-day UPS delivery for the cost of $19.50.

In March 2003, respondent Peter LoRe (LoRe) purchased eight tickets from Ticketmaster over the Internet for a concert scheduled to take place in New Jersey. In addition to the base price for the tickets, LoRe paid a "Building/Facility Charge" a "Convenience Charge," and an OPC. To the best of LoRe's recollection, LoRe elected to have all tickets delivered by UPS for a cost of $14.50.

Schlesinger and LoRe are named plaintiffs in this certified class action against Ticketmaster. Schlesinger and LoRe allege that the OPC and the UPS fee are sources of profit for Ticketmaster. At the time Schlesinger and LoRe made their respective purchases, they believed that the OPC and the UPS fee were merely "pass-through" costs (i.e. costs passed through to the consumer), and that Ticketmaster was not profiting from charging the two fees. Had Schlesinger and LoRe known that the OPC and the UPS fee

---

[1]    Our recitation of the facts is taken from this court's nonpublished opinion in a prior appeal in this matter, *Schlesinger v. Superior Court* (Aug. 31, 2010, B224880).

2

were sources of profit for Ticketmaster, they would not have purchased the tickets or would have elected a different delivery method.

## PROCEDURAL HISTORY

Schlesinger, LoRe, and one additional plaintiff (plaintiffs) filed this action on October 21, 2003. They alleged violations of the Unfair Competition Law (Bus. & Prof. Code, § 17200 et seq.), False Advertising Law (Bus. & Prof. Code, § 17500 et seq.), and the Consumer Legal Remedies Act (Civ. Code, § 1750 et seq.) against Ticketmaster. On February 5, 2010, the trial court granted in part, and denied in part, the plaintiffs' motion for class certification. The trial court certified a state-wide class, as opposed to a nationwide class, of consumers who had purchased tickets from Ticketmaster's website between October 21, 1999 and February 5, 2010. Plaintiffs appealed, and this court issued a peremptory writ of mandate directing the trial court to certify a nationwide class. The initial class notice, advising the class members of the certification order and allowing them an opportunity to opt-out, was sent to the class members in October 2010.

On November 2, 2010, Ticketmaster filed a motion to decertify the class. The motion was set for hearing on December 21, 2010. On November 20, 2010, both parties filed motions in limine which were subsequently fully briefed and scheduled for hearing at the January 10, 2011 final pretrial conference. Originally the case was set for trial on January 26, 2011.

Prior to the hearing on the motion to decertify, the parties agreed to settle the case. Thus, the hearing was taken off calendar. On November 2, 2011, the trial court granted preliminary approval of a proposed settlement of this action. A Notice Administrator was appointed by the court and thereafter gave written notice of the proposed settlement to the class. Appellant received notice of the settlement in November 2011.

On February 16, 2012, appellant filed a written objection to the proposed settlement. His primary complaint was that the settlement was inadequate because it capped certain benefits offered to class members on a per transaction basis at 17 transactions. Appellant argued that this cap was unfair to ticket brokers and other mass

purchasers who had made more than 17 unique purchases of tickets from Ticketmaster through ticketmaster.com during the class period (17+ purchasers).

On September 26, 2012, the trial court denied final approval of the proposed settlement and entered specific rulings on the objections. While the court sustained several objections to the settlement, it rejected appellant's primary argument that the 17 transaction cap was unfair. The court noted, "[W]hile Court denied final approval, limiting the number of coupons for any one classmember represents an attempt at a compromise."

On January 8, 2013, appellant moved to intervene.[2] The motion was heard on March 15, 2013, and on the same day the court issued an order denying the motion. The court found that appellant's motion was untimely and noted that whether intervention is of right, or only permissive, the party seeking to intervene must make a timely application to the court. (Code Civ. Proc., § 387, subd. (a) (section 387).) With some inapplicable exceptions, the court explained, the question of timeliness rests in the court's discretion. The litigation was at that time over nine years old, having initially been filed in October 2003. The class was certified two years prior to appellant's motion, and discovery was completed. The court found that appellant had provided no information as to why he had not intervened earlier in the case. The court rejected appellant's argument that timeliness should be measured from the date that the court denied final approval of the settlement in September 2012, as there is no authority to that effect.

While not necessary to its decision, the court also addressed appellant's claims that he had a right to mandatory or permissive intervention under section 387. As to mandatory intervention, the court found that appellant had not demonstrated either a statutory right to intervene or that the current named plaintiffs and their counsel were not representing his interests.

---

[2]     Appellant repeatedly asserts in his opening brief that he moved to intervene on October 12, 2012. However, the motion to intervene is file-stamped January 8, 2013.

4

As to permissive intervention, the court found that appellant had not established a direct or immediate interest in the case, and more importantly, that allowing appellant to intervene at that time would enlarge the issues in the litigation; require the reopening of discovery; and likely require further motion activity.

On May 8, 2013, appellant filed his notice of appeal of the trial court's ruling.

## DISCUSSION

### I. Standard of review

A denial of a motion for permissive intervention is reviewed for an abuse of discretion. (*Simpson Redwood Co. v. State of California* (1987) 196 Cal.App.3d 1192, 1199 (*Simpson*).

The appropriate standard of review for the denial of a motion to intervene as a matter of right, is subject to dispute. (See *Siena Court Homeowners Assn. v. Green Valley Corp.* (2008) 164 Cal.App.4th 1416, 1425 [noting that several appellate courts have implicitly applied the de novo standard of review to an order denying mandatory intervention, but at least one appellate court has applied the abuse of discretion standard].)[3]

However the lower court's "determination of one part of the test for [mandatory] intervention, timeliness, is reviewed for an abuse of discretion. [Citations.]" (*United States v. Washington, supra*, 86 F.3d at p. 1503.) Thus, when reviewing the issue of

---

[3] Appellant points out that federal courts have applied a de novo standard of review to motions denying intervention of right under the federal statute governing intervention, rule 24 of the Federal Rules of Civil Procedure. (*United States v. Washington* (9th Cir. 1996) 86 F.3d 1499, 1503 ["This court reviews de novo the denial of a motion to intervene as of right"].)

"Subdivision (b) of [section 387] is in substance an exact counterpart to rule 24(a) of the Federal Rules of Civil Procedure; '"[t]herefore, the Legislature must have intended that they should have the same meaning, force and effect as have been given the federal rules by the federal courts [citations]."' [Citation.]" Accordingly, the Legislature, in adopting subdivision (b) of [section 387], intended it to be interpreted consistently with federal cases interpreting rule 24(a)(2) . . . ." (*Hodge v. Kirkpatrick Development, Inc.* (2005) 130 Cal.App.4th 540, 556.) Given the parallels between the federal and state rules regarding intervention, we will cite to and rely on federal authority throughout this opinion.

5

timeliness, whether the intervention is permissive or mandatory, we apply the abuse of discretion standard.

Under the abuse of discretion standard, we give "abundant deference to the trial court's rulings." (*People v. Jackson* (2005) 128 Cal.App.4th 1009, 1018.) A trial court's exercise of discretion will not be disturbed on appeal unless the court exercised it in an arbitrary, capricious, or patently absurd manner resulting in a manifest miscarriage of justice. (*Baltayan v. Estate of Getemyan* (2001) 90 Cal.App.4th 1427, 1434.) "It is often said that a trial court's exercise of discretion will be reversed only if its decision is 'beyond the bounds of reason.' [Citation.]" (*Hosford v. Board of Trustees of California State University* (2005) 132 Cal.App.4th 359, 393.) "'Action that transgresses the confines of the applicable principles of law is outside the scope of discretion'" and constitutes an abuse of discretion. (*Ibid.*) Rulings within the trial court's discretion will not be disturbed unless ""'a manifest and unmistakable abuse of discretion clearly appears."' [Citation.]" (*People v. Davis* (1995) 10 Cal.4th 463, 524.)

## II.  Mandatory and permissive intervention

"Under the Code of Civil Procedure, intervention must be sought 'upon timely application,' whether intervention being sought is as of right or merely permissive. [Citation.]" (*Northern Cal. Psychiatric Society v. City of Berkeley* (1986) 178 Cal.App.3d 90, 109.) Thus, a threshold requirement for any motion to intervene is timeliness. (*Ibid.*)

A party may seek permissive intervention under section 387, subdivision (a). "The trial court has discretion to permit a nonparty to intervene where (1) the proper procedures have been followed, (2) the nonparty has a direct and immediate interest in the action, (3) the intervention will not enlarge the issues in the litigation, and (4) the reasons for the intervention outweigh any opposition by the parties presently in the action. [Citation.]" (*Chavez v. Netflix, Inc.* (2008) 162 Cal.App.4th 43, 51.)

Mandatory intervention is governed by section 387, subdivision (b). Under this provision:

"If any provision of law confers an unconditional right to intervene or if the person seeking intervention claims an interest relating to the property or transaction which is the subject of the action and that person is so situated that the disposition of the action may as a practical matter impair or impeded that person's ability to protect that interest, unless that person's interest is adequately represented by existing parties, the court shall, upon timely application, permit that person to intervene."

Thus, "[a] prospective intervener must demonstrate both adequate interest in the litigation's outcome and inadequate representation of its interest by either party. [Citation.] If the court determines that the petitioner satisfies both requirements, it must permit intervention." (*Estate of Davis* (1990) 219 Cal.App.3d 663, 667, fn. omitted.)

In the matter before us, appellant sought both permissive and mandatory intervention.

## III. It was not an abuse of discretion to find appellant's motion was untimely

As set forth above, a threshold requirement for both mandatory and permissive intervention is timeliness of the proposed intervener's motion. Although there is no statutory time limit on motions to intervene, the trial court may consider factors such as: (1) how long the proposed intervener knew of the litigation; (2) whether allowing intervention would delay the proceedings or prejudice the parties; and (3) whether intervention might inject additional issues into the litigation. (*Noya v. A.W. Coulter Trucking* (2006) 143 Cal.App.4th 838, 842 (*Noya*).)

Here, the trial court determined that the motion to intervene was untimely for the following reasons:

"This litigation is over nine years old, having initially been filed on October 21, 2003, with a class period stretching as far back as 1999. The class was certified two years ago, and discovery has been completed. There is nothing which demonstrates why [appellant] did not seek leave to intervene earlier in the case. The Court is not persuaded by [appellant's] argument that 'timeliness' should be measured from the date the Court denied final approval back on September 26, 2012. There is no persuasive authority to that effect."

7

There is no abuse of discretion in the trial court's finding of untimeliness.  The litigation was over nine years old and appellant had been aware of it for over a year.  Settlement negotiations were well under way and a proposed settlement had been reached.  The court noted that discovery had been completed, suggesting a concern that intervention might delay the proceedings further or interject new issues into the litigation.  The court's decision was rational and well within the bounds of reason.  (See, e.g., *Noya, supra*, 143 Cal.App.4th at p. 842 ["The trial court did not abuse its discretion when it denied Zurich's application for intervention as untimely. . . .  [I]t is significant that Zurich took no steps to participate in the litigation until several years had passed and a comprehensive settlement agreement had been reached . . . [a]llowing Zurich to intervene at this late juncture could delay or impede the resolution reached by those parties . . . [and] might also interject additional . . . issues into the litigation"].)  There is no manifest abuse of discretion.  Under the circumstances, our role is deferential, and we do not disturb the ruling of the trial court.

## IV.  The cases cited by appellant do not mandate reversal

Appellant argues that timeliness should be measured from the date the proposed intervenor should have been aware that his interests were no longer protected by the parties, rather than the date he/she learned of the litigation.  (*Officers for Justice v. Civil Service Com.* (9th Cir. 1991) 934 F.2d 1092, 1095 (*Officers for Justice*).)  Appellant suggests it was error for the lower court to calculate timeliness by looking at the overall length of the litigation rather than focusing on the precise time and event that triggered the need for appellant to intervene.  Appellant claims that this event did not occur until after the court denied final approval of the settlement agreement, when appellant's counsel approached class counsel to discuss appellant's objections regarding the 17+ purchasers.  Appellant says his counsel made this effort to be included in settlement negotiations, but was rebuked by class counsel.  Appellant does not provide a citation to the record documenting any such conversation.  Thus it appears that there was no evidence before the trial court as to the date or the precise content of this alleged interaction.

8

Appellant admits he was notified of the proposed settlement in November 2011. At that time, he had reason to know that his interests might be adversely affected by the outcome of the litigation. On February 16, 2012, appellant filed a written objection to the proposed settlement. His primary complaint was that the settlement was unfair to the 17+ purchasers. Appellant does not explain why his initial review of the proposed settlement, which instigated him to file the objection, did not trigger the motion to intervene.

Under the circumstances, the trial court did not abuse its discretion in declining to measure timeliness from an alleged conversation between counsel after the court's denial of approval of the proposed settlement agreement.

*Officers for Justice* does not mandate a different outcome. There, an individual police officer attempted to intervene on a motion to reconsider the trial court's ruling on the termination of a consent decree entered into 10 years previously. The district court denied the motion, finding it untimely because it was filed approximately 16 years after the complaint had been filed and 10 years after the court had approved the decree. The Ninth Circuit reversed, finding that the district court should have focused on the length of time that had passed from the date the officer's interests diverged from the defendants' interests. That moment occurred when the defendants changed their position that the decree automatically terminated after 10 years. (*Officers for Justice, supra*, 934 F.3d at pp. 1095-1096.) Here, in contrast, there has been no reversal of position on the part of class counsel.

Appellant also relies on *California Dep't of Toxic Substances Control v. Commercial Realty Projects* (9th Cir. 2002) 309 F.3d 1113 (*Toxic Substances*). In *Toxic Substances*, numerous cities attempted to intervene in an action to recover environmental response costs. Their motions were denied on the ground of untimeliness. (*Id.* at p. 1118.) The Ninth Circuit found that the district court did not abuse its discretion in denying the motions on the ground of untimeliness because the cities "did not move to intervene until after the parties settled, more than six years after the litigation commenced, and on the same day [plaintiff] moved for judicial approval of the consent decree." (*Id.* at p. 1119.) The Ninth Circuit acknowledged that the length of time that

9

has passed since the suit was filed is not, in and of itself, determinative of timeliness, but that "'[a] party seeking to intervene must act as soon as he knows *or has reason to know* that his interests might be adversely affected by the outcome of the litigation.' [Citation.]" (*Id.* at p. 1120.) Because the cities had reason to know that the negotiations might produce a settlement decree to their detriment, they should have attempted intervention earlier. (*Ibid.*)

Appellant claims this is exactly what he is attempting to do for the "next round" of settlement negotiations in this matter. However, appellant's argument is unavailing. Appellant fails to explain why he did not have reason to know that the outcome of litigation might produce a settlement to his detriment over a year before he filed his motion, when he first saw the terms of the proposed settlement agreement between the parties. *Toxic Substances* supports the trial court's conclusion that appellant's motion came too late. Like the proposed intervener in that case, appellant should have attempted intervention as soon as he had reason to know that the negotiations might produce a settlement to his detriment.

Next, appellant cites *Reich v. ABC/York-Estes Corp.* (7th Cir. 1995) 64 F. 3d 316.) There, two dancers attempted to intervene in the Secretary of Labor's action against the owner of an adult entertainment establishment for violations of minimum wage, overtime, and recordkeeping provisions of the Fair Labor Standards Act. Their motion to intervene was denied in part on the ground of untimeliness. The Seventh Circuit disagreed and reversed. The Seventh Circuit noted that "we do not necessarily put potential interveners on the clock the moment the suit is filed or even at the time they learn of its existence. Rather, we determine timeliness from the time the potential interveners learn that their interest might be impaired. [Citations.]" (*Id.* at p. 321.) The dancers had previously been informed that ABC was vigorously protecting their interests. But when the magistrate ordered a hearing on the Secretary's motion for default judgment against ABC, the dancers became aware that ABC's assurances were false. They filed their motion less than a month later. (*Ibid.*) The Seventh Circuit held that the dancers reasonably believed their interests were protected up until the time that the

10

Secretary filed its motion for default judgment. The dancers filed their motion within a reasonable time thereafter.

The matter before us is not factually comparable. Class counsel has not failed to prosecute this action, nor has it engaged in any significant default that has been brought to this court's attention. Appellant has not explained why he was not made aware of the alleged impairment of his interests when he first read the proposed settlement.

*In re Discovery Zone Secs. Litig.* (N.D. Ill. 1998) 181 F.R.D. 582, also cited by appellant, was a securities fraud class action brought on behalf of Discovery Zone (DZ) common stock purchasers. McDonald's Corporation, DZ's largest shareholder (*id.* at p. 586), moved to intervene "on the eve of settlement and after three years of contentious litigation and the considerable investment of judicial resources." (*Id.* at p. 585). The district court determined that McDonald's met the requirements of both intervention as of right and permissive intervention under Federal Rules of Civil Procedure, rule 24, and thus allowed McDonald's to intervene. Significant factors considered by the court included: (1) McDonald's belonged to the originally certified class; (2) McDonald's class membership was extinguished by a subsequent order of the court circumscribing the class period; (3) class counsel made a motion to restore the original class period; (4) McDonald's did not learn until September 1997 that class counsel had unilaterally settled the case and specifically excluded McDonald's from the settlement class; (5) within a month after McDonald's learned that it had been excluded from settlement, that class counsel had abandoned the fully briefed motion to restore the class period, and that the settlement agreement surrendered appeal rights on the class period rulings, McDonald's filed a motion to intervene. (*Id.* at pp. 590-594.) Considering these factors, the district court concluded that McDonald's moved to intervene well within a reasonable time after discovering that class counsel was no longer litigating or negotiating on its behalf. (*Id.* at p. 594.)

Appellant attempts to draw parallels between the 17+ purchasers and McDonald's. Appellant's position is flawed for many reasons. Appellant was not excluded from the

11

class by an order of the court, nor did class counsel approve a settlement agreement specifically excluding the 17+ purchasers.

Appellant ignores the relevant law, set forth in the cases that he cites, indicating that a person who desires intervention must act "'as soon as he knows *or has reason to know* that his interests might be adversely affected by the outcome of the litigation.'" (*Toxic Substances, supra*, 309 F.3d at p. 1120.) Appellant's position that he had no reason to know of his alleged adverse interest prior to the trial court's denial of approval of the proposed settlement is doubtable, and it was within the trial court's discretion to reject it.

In sum, none of the cases cited by appellant suggest that the trial court's decision in this matter was beyond the bounds of reason.

## V. Prejudice

Appellant cites *United States v. Oregon* (9th Cir. 1990) 913 F.2d 576, 588 for the proposition that "[o]ne of the 'most important' factors in determining timeliness is prejudice to the existing parties. [Citation.]" As set forth in *Truck Ins. Exchange v. Superior Court* (1997) 60 Cal.App.4th 342, 351, "timeliness is hardly a reason to bar intervention when a direct interest is demonstrated and the real parties in interest have not shown any prejudice other than being required to prove their case." Appellant argues that the court did not sufficiently address the issue of how appellant's intervention will actually prejudice the existing parties.

We find that the trial court adequately addressed the issue of prejudice. In its discussion of permissive intervention, the court noted: "[A]llowing [appellant] to intervene at this time would enlarge the issues in the litigation. It would require the reopening of discovery, and likely require further motion activity. There are otherwise no persuasive reasons for allowing intervention which outweigh Plaintiffs' and Ticketmaster's reasons for opposing it. Intervention at this date would likely retard the principal suit and/or reopen the case for further evidence. [Citations.]" The court's stated position on prejudice is well within the bounds of reason.

12

Appellant argues that the court's statement was not substantiated with any evidence. In fact, appellant argues, he confirmed at the hearing on intervention that he needed no further discovery, was not seeking a continuance, and was ready to proceed to trial. Because no evidence of prejudice existed in the record, appellant argues, the trial court could not reasonably have found prejudice to the parties.

Appellant is essentially asking that we find that the court was required to adopt appellant's perspective on the issue of prejudice. We decline to do so. The court has been handling the litigation for nine years and is quite familiar with the issues and the parties. The court had its own perspective on how the intervention would affect the proceedings.

Furthermore, contrary to appellant's assertions, plaintiffs and Ticketmaster argued vehemently that significant additional discovery and proceedings would be necessary if appellant were permitted to intervene. Plaintiffs' counsel noted that if appellant were permitted to intervene, "it would mean additional class certification proceedings, delay, unnecessary proceedings, which is just going to drag this out." Ticketmaster's counsel also took the position that the intervention would exponentially complicate the case:

> "It's hard to sit idly by while comments are made about the fact that this would not cause prejudice to all parties . . . . It's silly. As the court knows, there will be, if this case is not otherwise resolved, a forthcoming motion to decertify on the grounds that this gentleman [appellant], and the class he purports to represent [the 17+ purchasers], raise, potentially, a host of individualized issues relating to, among other things, their purported injury. These people tend to gain the system on Ticketmaster's website by having shills make purchases. So if you look at Ticketmaster's database, you'll see a host of names -- Joe Smith who bought 1,000 tickets. Joe Smith bought the 1,000 tickets, and then goes to somebody like [appellant] and says here's the 1,000 tickets. Pay me back. Mr. Smith is then made whole. He gets his entire investment back. And he's probably paid minimum wage or something more for having sat on the system or worked a computer bot on our system. There's no way to find all the Mr. Smiths of the world. This would unbelievably complicate this case. [Appellant] has an interesting background, which we won't get into, but for him to ever represent a subclass, he'd have to show he's an adequate representative. We'd have a new round of certificate proceedings. Bottom line is . . .

there's no reason, at this point in the proceedings, to complicate matters further."

The trial court was not required to adopt appellant's perspective on prejudice. Instead, the trial court considered the arguments of all counsel, and reasonably concluded that intervention by appellant at that stage of the litigation was unduly prejudicial. Considering the arguments presented at the hearing, this decision was well within the bounds of reason.

**VI.  The remaining elements of compulsory and permissive intervention**

As set forth above, timeliness is a necessary component of both permissive and compulsory intervention.  (*Northern Cal. Psychiatric Society v. City of Berkeley, supra*, 178 Cal.App.3d at p. 109.)  "If the court finds that the motion to intervene was not timely, it need not reach any of the remaining elements . . . .  [Citation.]"  (*United States v. Washington, supra*, 86 F.3d at p. 1503.)

Because we have determined that the trial court did not abuse its discretion in determining that appellant's motion to intervene was not timely, we need not discuss the other elements of permissive and mandatory intervention.

**DISPOSITION**

The order is affirmed.  Respondents are awarded their costs of appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.

_____, J.
CHAVEZ

We concur:

_____, P. J.
BOREN

_____, J*
FERNS

_____
* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.