ORDER
We must rule on motions to intervene in this Second Amendment case which were filed after our opinion and judgment reversing the District Court were filed.
*572 When Sheriff William D. Gore declined to file a petition for rehearing en banc in this case, the State of California and the Brady Campaign to Prevent Gun Violence moved to intervene under Federal Rule of Civil Procedure 24. The California Police Chiefs’ Association (CPCA) and the California Peace Officers’ Association (CPOA), amici in this case, submitted a petition for rehearing en banc. However, amici cannot file petitions for rehearing en banc. See Day v. Apoliona, 505 F.3d 968, 964 (9th Cir.2007). We therefore construe CPCA and CPOA’s petition as a motion to intervene. See CPCA & CPOA Pet. for Reh’g En Banc at 2 n.2 (“To the extent the Court finds that CPCA and CPOA must be a party in order to submit this petition, CPCA and CPOA request that this Court construe this petition to also be a request to intervene as parties.”).
II
Intervention, both of right and by permission, can occur only “[o]n timely motion.” Fed.R.Civ.P. 24(a)-(b). Timeliness is determined with reference to three factors: “(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay.” United States v. Alisal Water Corp., 370 F.3d 915, 921 (9th Cir.2004) (quoting Cal. Dep’t of Toxic Substances Control v. Commercial Realty Projects, Inc., 309 F.3d 1113, 1119 (9th Cir.2002)).
A
Regarding the first factor, the stage of the proceedings, the age of the case discourages us from declaring the motions timely. The movants sought intervention more than four years after this case began. See id. (affirming a district court’s denial of a motion to intervene as untimely when it was filed four years into the proceedings).
That this case is now on appeal rather than in the district court further suggests that the motions to intervene are untimely. See Bates v. Jones, 127 F.3d 870, 873 (9th Cir.1997); Amalgamated Transit Union Int’l, AFL-CIO v. Donovan, 771 F.2d 1551, 1552 (D.C.Cir.1985) (per curiam) (“A court of appeals may allow intervention at the appellate stage where none was sought in the district court only in an exceptional case for imperative reasons.” (internal quotation marks omitted)). In this case, the movants filed motions to intervene after our opinion was filed. If intervention on appeal is limited to “exceptional case[s],” then, by the same logic, intervention after the publication of an appellate opinion must be extremely rare. The first factor, therefore, weighs against timeliness.
B
The second factor, on the other hand, weighs in favor of timeliness. The parties have not given us any reason to believe that they would face prejudice as a result of delayed intervention by the mov-ants.
C
The third factor, the reasons for and -length of the delay, suggests that the motions to intervene are untimely. Under our longstanding precedent, “[a] party seeking to intervene must act as soon as he ‘knows or has reason to know that his interests might be adversely affected by the outcome of the litigation.’ ” United States v. Oregon, 913 F.2d 576, 589 (9th Cir.1990) (quoting United States v. City of Chicago, 870 F.2d 1256; 1263 (7th Cir.1989)); accord Alisal Water, 370 F.3d at 922-23; Commercial Realty Projects, 309 F.3d at 1120.
*573 Both California and the Brady Campaign argue that their delay in moving to intervene was reasonable. They filed their motions shortly after learning that Sheriff Gore would not file a petition for rehearing en banc, which they contend was the moment they knew that Sheriff Gore would not adequately protect their interests. Cal. Mot. to Intervene at IB; Brady Campaign Mot. to Intervene at 14. If the movants originally thought that Sheriff Gore adequately protected their interests, they must have “know[n] that [their] interests might be adversely affected by the outcome of the litigation.” Oregon, 913 F.2d at 589. The movants do not deny that they have long been aware of this case.[1]
Although the movants may have avoided some inconvenience to themselves by waiting to seek intervention, such considerations do not justify delay. See Alisal Water, 370 F.3d at 923-24 (“An applicant’s desire to save costs by waiting to intervene until a late stage in litigation is not a valid justification for delay.”). A contrary rule “would encourage interested parties to impede litigation by waiting to intervene until the final stages of a case.” Id. at 924.
D
California and the Brady Campaign rely on our order in Day v. Apoliona, in which we granted the State of Hawaii’s motion to intervene even though it was filed after the panel opinion was published. 505 F.3d 963, 966 (9th Cir.2007). Day’s reasoning makes clear that it represents the exception rather than the rule. The Day order expressly relied on the fact that Hawaii had not “ignored the litigation or held back from participation to gain tactical advantage.” Id. Instead, Hawaii had “sought amicus status, and — singlehandedly—ar-gued a potentially dispositive issue in this case to the district court and this panel.” Id. Such participation was especially helpful because the existing defendants were “unwilling[ ] ... to take a position on th[at] issue.” Id. at 965.
This case is quite different. Neither California nor the Brady Campaign participated as an amicus below or before this Court. Brady Campaign Mot. to Intervene at 1 n.l (distinguishing between the Brady Campaign and the Brady Center). Although CPCA and CPOA are amici, their participation has not been comparable to Hawaii’s in Day. CPCA and CPOA did not, “singlehandedly” or otherwise, argue any issue that Sheriff Gore refused to litigate.
Ill
Considering each of the relevant factors, we conclude that the movants have *574 not met the heavy burden of demonstrating “imperative reasons” in favor of intervention on appeal. Bates, 127 F.3d at 873. The stage of the proceedings, the length of the delay, and the reason for the delay all weigh against timeliness. In the absence of a timely motion, intervention is unavailable. Fed.R.Civ.P. 24(a)-(b).
IV
The dissent asserts that 28 U.S.C. § 2403 and Federal Rule of Civil Procedure 5.1 provide a basis for intervention. These assertions are incorrect.
28 U.S.C. § 2403(b) provides:
In any action, suit, or proceeding in a court of the United States to which a State or any agency, officer, or employee thereof is not a party, wherein the constitutionality of any statute of that State affecting the public interest is drawn in question, the court shall certify such fact to the attorney general of the State, and shall permit the State to intervene for presentation of evidence, if evidence is otherwise admissible in the case, and for argument on the question of constitutionality. The State shall, subject to the applicable provisions of law, have all the rights of a party and be subject to all liabilities of a party as to court costs to the extent necessary for a proper presentation of the facts and law relating to the question of constitutionality.
28 U.S.C. § 2403(b) (emphasis added). Similarly, Rule 5.1 requires “[a] party that files a pleading, written motion, or other paper drawing into question the constitutionality of a federal or state statute” to “file a notice of constitutional question” and serve such notice on the relevant sovereign’s attorney general. Fed.R.Civ.P. 5.1 (emphasis added).
The dissent admits that no “law or regulation other than the county-specific good cause requirement was in jeopardy” when Peruta presented his challenge to the District Court, dissent at 577, but argues that “on appeal, the case morphed into another challenge entirely, as the majority opinion instead considered the constitutionality of California’s firearm regulatory framework.” Dissent at 576. But the dissent cannot assert that the case somehow “morphed” on appeal into a new challenge when the only law “drawn into question”' on appeal was the law challenged at the District Court: the San Diego County policy.
Peruta’s challenge is only to the San Diego County policy that “an assertion of self-defense is insufficient to demonstrate ‘good cause’ ” under the California statutory scheme. See Peruta v. County of San Diego, 742 F.3d 1144, 1147-48, 1167-68, 1179 (9th Cir.2014) (asking “whether San Diego County’s ‘good cause’ permitting requirement ‘infringefs]’ the right” to bear arms; assessing “the nature of the infringement that the San Diego County policy purportedly effects on the right to bear arms”). As the opinion states, this is “a narrow challenge to the San Diego County regulations on concealed carry, rather than a broad challenge to the state-wide ban on open carry[.]” Id. at 1172-73. Simply put, no California statute has been challenged, overturned, or had its constitutionality “drawn into question.” Of course, analyzing the constitutionality of the San Diego County policy required “considering” the California statutory scheme, but only inasmuch as it established the “backdrop” for interpreting the “County’s restrictive interpretation of ‘good cause’.” Peruta, 742 F.3d at 1171; see also id. at 1169-70 (considering the California scheme and its exemptions, in order to show that “it is as though S an Diego County banned all political speech, but exempted from this restriction particular [people, places, and *575 situations]” and that “the severe restrictions in effect in San Diego County” function as “a near total-prohibition on bearing [arms]”).
Most importantly, the opinion never “draws into question” the “constitutionality” of any California statute — it only questions San Diego County’s exercise of regulatory authority under such state statutes. See Mot. of CA to Intervene at 7 (admitting the Court’s opinion does “not directly rul[e] on the constitutionality of state statutes” and only challenges the San Diego County policy regarding “good cause” (internal quotations omitted)). Though the ■Supreme "Court authority interpreting the phrase “drawn in question” is not of recent vintage, it is clear:
The validity of a statute is not drawn in question every time rights claimed under such statute are controverted, nor is the validity of an authority, every timé an act done by such authority is disputed. The validity of a statute or the validity of an authority is drawn in question when the existence, or constitutionality, or legality of such statute or authority is denied, and the denial forms the subject of direct inquiry.
U.S. v. Lynch, 137 U.S. 280, 285, 11 S.Ct. 114, 34 L.Ed. 700 (1890) (per Fuller, C.J.), cited in 16B C. Wright, A. Miller, E. Cooper, & R. Freer, Federal Practice and Procedure § 4013 (3d ed.) (describing Lynch’s description of the phrase “drawn in question” as “[o]ne of the most frequently quoted” nineteenth century decisions which “established [the phrase’s] meaning”); see also Kennard v. State of Nebraska, 186 U.S. 304, 308, 22 S.Ct. 879, 46 L.Ed. 1175 (1902) (explaining that no federal statute was “drawn in question” when such statutes were construed by the state court, as “the validity of a statute or treaty of the United States is not ‘drawn in question,’ within the meaning of § 709 [of the Judicial Code], every time rights claimed under a statute or treaty are controverted”), cited in 16B Wright & Miller, § 4013; Comment, The Judiciary Act of 1937, 51 Harv. L.Rev. 148, 148-49 (1937) (“The chief purpose of [adding § 2403 to the Judicial Code] is to remove the possibility of having a federal statute declared unconstitutional in a suit to which the United States was not a party-” (emphasis added)).
Thus “[d]rawing in question the validity of a statute” requires more than “the mere objection to an exercise'of authority under a statute, whose validity is not attacked.” Jett Bros. Distilling Co. v. City of Carrollton, 252 U.S. 1, 6, 40 S.Ct. 255, 64 L.Ed. 421 (1920); see also Wilson v. Cook, 327 U.S. 474, 480-82, 66 S.Ct. 663, 90 L.Ed. 793 (1946) (explaining that suit challenging official’s interpretation of state statute as applying to timber collected from U.S. land did not challenge the validity of the statute and thus the statute’s constitutionality was not “drawn in question”) (citing Jett Brothers ).[2] That the opinion engages in analy *576 sis and interpretation of California statutes does not change that the only “objection” raised and decided is the exercise of authority under such statutes, not the statutes themselves. No right of intervention under § 2403 or Rule 5.1 exists here.
V
The State of California’s Motion to Intervene is DENIED.
The Brady Campaign’s Motion for Leave to Intervene is DENIED.
CPCA and CPOA’s Petition for Rehearing En Banc, construed as a motion to intervene, is DENIED.

. The dissent claims that California's delay is justified because "until the majority opinion was issued, it was not apparent that any law or regulation other than the county-specific good cause requirement was in jeopardy.” Dissent at 578 (citing Peruta v. County of San Diego, 758 F.Supp.2d 1106, 1113-17 (S.D.Cal. Dec.10, 2010)). However, the district court opinion itself cited by the dissent noted that the County of San Diego "maintains Plaintiffs are asserting a back door attack on the constitutionality of [the California statute].” Peruta, 758 F.Supp.2d at 1115 n. 7. Thus, if "California’s firearm regulatory framework” had been placed under “consid--era[tion]”, dissent at 576, such consideration began in the district court long before issuance of our opinion, nearly three and a half years before, in fact.
Moreover, as explained in more detail below, see Part IV, infra, no law or regulation other than San Diego County's good cause policy has been invalidated, "drawn in question,” or placed "in jeopardy” by the panel opinion — notwithstanding San Diego County’s claim that state statutes were under "back door attack” or the dissent's insistence that California state law is "in jeopardy.” Dissent at 577, 578.

. Jett Brothers and Wilson interpreted § 237 of the Judicial Code, which conferred jurisdiction on the Supreme Court when a suit "draw[s], in question the validity of a statute of any State, on the ground of its being repugnant to Constitution, treaties, or laws of the United States.” Judiciary Act of 1925, ch. 229, 43 Stat. 936 (enacting Judicial Code § 237).
More recent authority, from this circuit and others, also demonstrates that no state statute has been "drawn into question” here. Interpreting the accompanying provision of § 2403(a), identical to § 2403(b) except that it involves federal rather than state statutes, we have explained that § 2403’s purpose is “ensuring that courts not rule on the constitutionality of an Act of Congress without first receiving input from the United States.” Carroll v. Nakatani, 342 F.3d 934, 945 (9th Cir.2003). Certainly ruling on the constitutionality of, say, a federal regulation would not *576 constitute ruling on the constitutionality of an Act of Congress. Analogously, ruling on the constitutionality of a County policy does not constitute ruling on the constitutionality of a “statute of [a] State.” See Int’l Paper Co. v. Inhabitants of Town of Jay, Me., 887 F.2d 338, 341 (1st Cir.1989) (explaining that "challenging a municipal ordinance” does not constitute “questioning the constitutionality of a state statute” under § 2403(b)); Gillon y. Federal Bureau of Prisons, 424 Fed.Appx. 722, 726 (10th Cir.2011) (explaining that a challenge to a federal agency policy is not a challenge to a "a federal or state statute” under Rule 5.1); cf. Schwierv. Cox, 340 F.3d 1284, 1286 (11th Cir.2003) (Federal intervention under 28 U.S.C. § 2403(a) was permissible because party argued that federal statute was itself unconstitutional); Strong v. Bd. of Educ. of Uniondale Union Free Sch. Dist., 902 F.2d 208, 213 n. 3 (2d Cir.1990) (finding a statute’s constitutionality “drawn into question” when the plaintiff explicitly argued it was unconstitutional); ■ Arizonans for Official English v. Arizona, 520 U.S. 43, 74, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997) (explaining the state Attorney General had a right to intervene under § 2403(b) when a state constitutional provision was directly challenged).